379 So.2d 490 (1979)
Robert W. DOMINGUE, Plaintiff,
v.
LUKE FRUGE, INC., et al., Defendants.
(Trinity Universal Insurance Company, Appellant).
No. 7301.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Rehearing Denied February 12, 1980.
Mouton & Jeansonne, Welton P. Mouton, Jr., Lafayette, for defendant-appellant.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Fred H. Sievert, Jr., Plauche, Smith, Hebert & Nieset, Allen L. Smith, Jr., McClain, Morgan & Greenwald, R. Scott McClain, Brame, Bergstedt & Brame, David A. Fraser, Lake Charles, Voorhies & Labbe, D. Mark Bienvenu, Nicholas Gachassin, of Cole & Guidry, Lafayette, for defendant-appellee.
Jones, Jones & Alexander, J. B. Jones, Jr., Cameron, Raleigh Newman, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, FORET and SWIFT, JJ.
FORET, Judge.
The issue presented by this appeal is whether indemnity is available after a settlement agreement, prior to trial, between one of several defendants and the plaintiff where a subsequent jury verdict completely exonerates from liability the settling defendant. The district court held that indemnity is not available. We affirm.
Plaintiff, Robert Domingue[1], sustained injuries, from which he died ninety days later, when he fell from the derrick of a work-over rig owned by his employer, Luke Fruge, Inc. The accident occurred on June 4, 1976. The Luke Fruge rig was on location for Exchange Oil and Gas Corporation (hereafter Exchange), the owner of an oil well which was situated on inland waters in Cameron Parish, Louisiana.
Exchange had chartered two barges to facilitate the work-over operation. One *491 barge was moored to the well structure, and the truck-mounted work-over rig of Luke Fruge, Inc. had been positioned on the deck of the barge for well operations. The second barge chartered by Exchange had been towed to location and tied on to the first barge. On the deck of the second barge were several vehicles, including a wireline truck owned by Otis Engineering Corporation (hereinafter Otis), the insured of Highlands Insurance Company.
Made defendants in the case were Exchange Oil and Gas Corporation; Luke Fruge, Inc. and his alleged insurer, Great Falls Insurance Company; Ivan Fuselier and his alleged insurer, Trinity Universal Insurance Company, who then third-partied Otis Engineering Corporation and its insurer, Highlands Insurance Company. The case was tried to a jury in Cameron Parish, and the jury was asked to answer detailed interrogatories in rendering its verdict. On the day of the trial, but immediately prior to the trial, Trinity Universal Insurance Company, insurer of Ivan Fuselier, and Ivan Fuselier entered into a settlement with the plaintiff for $100,000.00, in full settlement of all claims against Trinity, and presumably Ivan Fuselier. Plaintiff reserved all of his rights against all of the other defendants.
Ivan Fuselier was allegedly an independent contractor who was hired by Exchange to perform "drilling supervisor" duties and to oversee Exchange's interest in the well operations. Trinity Universal denied that its policy of insurance issued to Ivan Fuselier covered the allegations in the Domingue law suit. However, as mentioned above, prior to the commencement of trial, Trinity Universal entered into a settlement agreement with the plaintiff for the settlement of all claims of plaintiff against Trinity and presumably Ivan Fuselier.
The jury found, pursuant to instructions under the Federal Admiralty and Maritime Laws, that Robert Domingue, decedent, was a seaman; that Exchange Oil and Gas Corp. was negligent; and that the work-over barge on which Domingue was working was unseaworthy. Luke Fruge, Inc., Ivan Fuselier, and Otis Engineering Corporation were all found not guilty of any negligence. Finally, Robert Domingue was found to have been 5% contributorily negligent, and the jury granted an award totalling $397,698.07.
The only appeal taken was by Trinity as a result of the trial court's finding, on a motion for new trial on that single issue, that Trinity was not entitled to indemnification from any of the other defendants or their insurers.
Although the jury exonerated Fuselier of any negligence, Trinity Universal sought a full indemnification and repayment from the other exonerated defendants and/or their alleged insurers of the $100,000.00 that it paid in settlement to plaintiff. It now prosecutes this appeal and seeks full indemnity or, in the alternative, contribution from several insurers including Highlands Insurance Co., Stonewall Insurance Co., and Niagara Fire Insurance Co. on the basis of proration of the various applicable insurance policies. Trinity bases its claim for indemnity and/or contribution upon the rule enunciated in the case of Wisconsin Barge Line, Inc. v. The Barge Chem 300, 546 F.2d 1125 (5th Cir. 1977).
A reading of the Wisconsin Barge case immediately reveals its distinction from the instant case. In Wisconsin Barge, the Jones Act employer who settled with one of his crewman for injuries sought indemnity from the owner of a barge, the charterer of the barge and the wharfinger, contending that their negligence resulted in his Jones Act liability. Judge Fay, in writing the decision, pointed out that a Jones Act employer has significant responsibilities toward a crewman which might not result from an overt act of negligence on the part of the Jones Act employer. As a matter of fact, in the Wisconsin case there was also pending an Illinois state action in which the employer faced serious justiciable issues and potential liability (Footnote 3, pg. 1129 supra). The Court found the employer's exposure realistic, its settlement justified and, upon further finding that the employer had not, in fact, been negligent, nor was the vessel unseaworthy but that the wharfinger *492 was the sole and proximate cause of the accident, granted indemnity.
This is entirely different from what Trinity seeks to do in the instant case. Wisconsin Barge recognized the right of indemnity from a negligent third party. Here, Trinity seeks indemnity or contribution from alleged insurers of its own non-negligent insured.
In the instant case, its insured, Ivan Fuselier, was exonerated from negligence. That means that neither Ivan Fuselier nor anybody who might provide insurance coverage for Ivan Fuselier is liable for anything. Trinity, however, who wrote a policy covering Fuselier, believed that Fuselier might have been negligent and chose to settle its liability, if any, without a trial. The other insurers, believing that they did not cover any liability of Fuselier, went to trial and the issue of any coverage for Fuselier was rendered moot when it was found by the jury that Fuselier was not negligent and, hence, there was no "legal liability" for which any insurance coverage was necessary.
It should be noted that the same Judge Fay is the author of a recent Fifth Circuit opinion concerning contribution among joint tort feasors in Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir. 1979).
In the Leger case, a Jones Act claimant filed suit against his employer and several other defendants as a result of personal injuries. The plaintiff settled his claims with his employer on the morning of the trial, and the plaintiff, Leger, tried his case solely against one of the defendants.
The district court ultimately held that the negligence of all three defendants was at issue and directed the jury to assign percentages of negligence to each. The Court then apportioned the jury's award on the basis of the percentage of negligence which each defendant played in causing the damages and required Dresser to pay only its share of liability. This portion of Leger is of no moment to this appeal. What is of interest in this appeal, however, is the very frank discussion of Judge Fay about the court's attitude concerning settlement of parties in pending litigation.
In the Leger case, one of the issues by the remaining defendant in the lawsuit, Dresser Industries, was whether Dresser Industries got any credit against the plaintiff's judgment for the sums paid by Drilling Well Control, plaintiff's employer, and Continental Oil Company. The jury found the aggregate negligence of both Drilling Well Control and Continental to have been 20%. Those defendants, however, had paid in settlement a sum in excess of 20% of the jury verdict. Dresser Industries, the sole defendant in the lawsuit, wanted a full dollar for dollar credit against the judgment. In denying this dollar for dollar credit, Judge Fay had the following comments to make concerning settlement:
"Intervening cases justify our departure from prior case law in this area. See Billiot v. Sewart Seacraft, Inc., 382 F.2d 662 (5th Cir., 1967); Loffland Brothers Co. v. Huckabee, 373 F.2d 528 (5th Cir., 1967). The prior rule, as enunciated in Billiot and Loffland, provided that, where one jointly negligent maritime defendant had settled before trial, the injured party could recover from the remaining defendant an amount determined by reducing the total damages by the amount of the settlement. This method was designed to prevent the plaintiff from receiving a double recovery for his injuries. In our view, the Leger rules accommodate the interests of fairness and deterrence without sacrificing the policy against double recovery upon which Billiot and Loffland were founded.
"In this case, Leger did not receive a double recovery for his injuries. In accord with its ground rules, the trial court rendered judgment against Dresser for $127,840.00, representing Dresser's percentage of negligence (45%) multiplied by Leger's damages as found by the jury ($284,090.00). Although Leger nominally received $310,171.05 by virtue of the settlement and the judgment, we do not consider this a double recovery. Leger merely obtained a favorable settlement. By releasing DWC and Continental in *493 exchange for $182,331.05, Leger "sold" or relinquished any claims which he had against them. See Rose v. Associated Anesthesiologists, 163 U.S.App.D.C. 246, 501 F.2d 806 (1974) (characterizing a settlement as a pro rata sale of the plaintiff's claim). At the time of the settlement negotiations, no one knew how a jury would apportion fault or in what amount it would find damages. By settling with Continental and DWC, Leger took the risk that he was foregoing a larger amount possibly to be obtained at trial. Likewise, Continental and DWC must have considered the amount for which they settled to be less than their exposure at trial would have been. Dresser made a different assessment. By going to trial it took the risk that the jury would find substantial damages and a high degree of negligence on its part. With the benefit of hindsight it is clear that only Leger correctly charted his course. However, according to the rules which we adopt today, Leger could have lost a great deal. For example, if he had settled with DWC and Continental for $182,331.05 and if the jury had found $1,000,000 in total damages, but that Dresser was only 5% Negligent, Leger would have been left with the $182,331.05 in settlement with DWC and Continental and $50,000 in judgment against Dresser (5% of $1,000,000). He would have released a claim subsequently found to be worth $950,000 in exchange for $182,331.05. He could not then complain that he made a poor settlement and that he should receive more based on the jury's assessment of his total damages at $1,000,000. Whether the plaintiff obtains a favorable or unfavorable settlement, he may only recover once for each wrongdoer's percentage of fault.
"The encouragement of settlements is the final factor which must be considered in this case. Whether the plaintiff or any of the defendants are ultimately found to have made a favorable settlement, we will `respect the aleatory nature of the settlement process....' Doyle v. United States, 441 F.Supp. 701, 711 n.5 (D.S.C.1977). If Dresser were allowed to reduce Leger's recovery against it by the dollar value of Leger's settlement, Dresser would be left to pay a small portion ($284,090.00 total damages minus $182,31.05 settlement minus $99,400 for plaintiff's contributory negligence equals $2,358.95) of the total damages even though its negligence was the main contributing factor in causing them. Thus, Dresser would benefit substantially from its intransigence or miscalculation in refusing to settle the case. We refuse to adopt an approach which would reward a defendant for refusing to settle. If the party decides to try a case, it must be prepared to accept whatever benefits or burdens flow from its decision."
There is no jurisprudence from Louisiana appellate courts or the Louisiana Supreme Court on point in this case. Even assuming for the sake of argument that the Wisconsin Barge case is not distinguishable from the case at bar, and even ignoring the language in the Leger case, we would be disinclined to follow Wisconsin Barge for the very reasons stated in Leger. Trinity, whose own insured was completely exonerated from negligence ultimately, very simply achieved an out-of-court settlement which, at the time, it apparently believed to be in its and its insured's best interest. Trinity did not enter into an agreement with plaintiff or any other of the defendants or their insureds whereby the latter agreed to indemnify Trinity wholly, or partly, for any of the settlement money which Trinity paid out in its settlement. To order indemnity or contribution in this case, in our view, would greatly alter the course of future settlement negotiations in cases such as this and would certainly be a radical departure from our long standing jurisprudential concept that settlements are to be encouraged rather than discouraged.
Trinity further claims that Ivan Fuselier was an omnibus insured under insurance *494 policies, such as the one issued by Highlands Insurance, insurer of Otis Engineering. We find no merit in this contention. Our resolution of the first issue renders the second issue moot. Further, since the jury determined that all parties except Exchange were not negligent, and hence not liable, we see no need to discuss whether or not Fuselier was an employee of Exchange and whether or not the truck to which the derrick was attached was a vehicle within the meaning of the applicable policy or policies.
For the reasons given above, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against appellant, Trinity Universal Insurance Company.
AFFIRMED.
NOTES
[1] Following Robert Domingue's death, his surviving spouse, Stella Domingue, was substituted as party plaintiff.