783 So.2d 46 (2000)
Julie A. GOLDSEN
v.
Rebecca Ann SIMPSON.
2980326.
Court of Civil Appeals of Alabama.
April 21, 2000.
*47 William W. Watts III of Hudson & Watts, L.L.P., Mobile, for appellant.
G. Randall Spear of Richardson, Spear & Spear, P.C., Mobile, for appellee.

On Application for Rehearing
CRAWLEY, Judge.
The opinion of December 10, 1999, is withdrawn, and the following is substituted therefor.
Rebecca Ann Simpson was injured in a three-car collision in the George C. Wallace Tunnel in Mobile. A vehicle being driven by Julie A. Goldsen struck a vehicle being driven by David L. Herbstreith, and Herbstreith's vehicle struck Simpson's vehicle. Simpson settled her claim against Herbstreith for $20,000, the limit of his automobile liability insurance policy. Simpson then sued Goldsen, alleging negligence and wantonness, and sued her own insurer, claiming underinsured-motorist benefits. Goldsen answered, denying any negligence or wantonness, and pleading the $20,000 settlement with Herbstreith's insurer as an affirmative defense of pro tanto release.
Before trial, Simpson filed a motion in limine, seeking to exclude any reference to the settlement with Herbstreith's insurer. The trial court granted the motion, but later modified that ruling to allow limited reference to the fact of the settlement, but not to the amount of the settlement. At trial, Simpson's counsel referred to the settlement in his opening statement, and Goldsen's counsel cross-examined Herbstreith concerning the settlement.
This court has discussed the purpose of underinsured-motorist coverage in Guess v. Allstate Ins. Co., 717 So.2d 389, 390 (Ala.Civ.App.1998). Judge Holmes, writing for the court, stated, "Underinsured motorist coverage applies `where the negligent or wanton tortfeasor has some liability insurance but does not have enough to fully compensate the victim of his negligence or wantonness.' Hardy v. Progressive Ins. Co., 531 So.2d 885, 887 (Ala. 1988)." Although Herbstreith was not a party, the issue of his negligence was submitted to the jury because of Simpson's claim against her insurer for UIM benefits. If Goldsen were found to be negligent and Herbstreith not to be negligent, then Simpson's insurer would owe UIM benefits amounting to the difference between Goldsen's policy limits and a larger jury verdict. If, on the other hand, Herbstreith were found to be negligent and Goldsen not to be negligent, then the insurer would owe UIM benefits amounting to the difference between Herbstreith's $20,000 policy limits and a larger jury verdict. If both were found to be negligent, the insurer would owe UIM benefits only to the extent that the jury verdict exceeded the limits of both policies. Therefore, in order to resolve this problem, the parties agreed that the jury would be instructed to return a general verdict *48 accompanied by answers to interrogatories.
The jury returned the following verdict:
"(1) Do you find that David L. Herbstreith was negligent and that his negligence proximately caused or contributed to Ms. Simpson's damages, if any? No.
"(2) Do you find that Julie A. Goldsen was negligent and [that] her negligence proximately caused or contributed to Ms. Simpson's damages, if any? Yes.
"(3) What do you determine the damages of Ms. Simpson to be? $76,898.39 compensatory."
Goldsen filed a posttrial motion to set off the $20,000 settlement against the $76,898.39 verdict. The trial court denied the motion, and Goldsen appealed to the Alabama Supreme Court. The supreme court transferred the case to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
Goldsen argues that the policy of the law is to provide an injured party with one satisfaction for her injuries; that the jury determined Simpson was injured in the amount of $76,898.39; and that unless the $20,000 settlement is set off against the verdict, Simpson will recover more than what the jury determined was the full extent of her injuries. Simpson, on the other hand, argues that the jury verdict exonerating Herbstreith from any liability established that Herbstreith was not a joint tortfeasor and, therefore, that Goldsen was not entitled to deduct Herbstreith's settlement from the amount of the verdict.
"It is well settled that a person injured by joint tort-feasors may release one or more pro tanto and proceed against the others. The tort-feasors may plead the release as a bar to that amount paid by the released tort-feasor or may place it in evidence showing payment for the injury up to the amount shown in the release. Anderson v. Kemp, 279 Ala. 321, 184 So.2d 832 (1966)."
Bucyrus-Erie Co. v. Von Haden, 416 So.2d 699, 702 (Ala.1982). "If the plaintiff gets recovery from one joint tortfeasor and pursues the other tortfeasor, ... the latter can claim set off or credit against the plaintiff for any sums paid by the other tortfeasor." C. Gamble & J. Marsh, Alabama Law of Damages § 10-4 at 101 (4th ed.1999). "The relief to which the joint tortfeasor is entitled is a set-off of the amount of the pro tanto settlement against the amount of the verdict." Campbell v. Williams, 638 So.2d 804, 812 (Ala.1994). Codefendants who are not joint tortfeasors, however, are not entitled to a setoff. Ex parte Martin, 598 So.2d 1381, 1384 (Ala.1992).
The parties have not cited, and our research has not revealed, any Alabama case dealing with the issue whether a court is to reduce the amount of a judgment against a nonsettling party by the amount of a settlement the plaintiff has made with a party who the finder of fact has determined is not liable. That issue presents "purely a question of law, subject to this court's review de novo." Berg v. Footer, 673 A.2d 1244, 1247 (D.C.1996); Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1019 (5th Cir.1994). There is a split of authority among other jurisdictions that have considered the issue.
"Whether the operation of a release of one person from liability for a tort, upon the liability of another for the same injury, is affected by the fact that the person so released was not in fact or law liable, is a question upon which the decisions are regarded as conflicting...."
66 Am.Jur.2d Release § 42 at 724 (1973) Compare, e.g., Domingue v. Luke Fruge, Inc., 379 So.2d 490 (La.App.1979); Anunti *49 v. Payette, 268 N.W.2d 52 (Minn.1978); and Rogers v. Spady, 147 N.J.Super. 274, 371 A.2d 285 (1977) (disallowing setoff) (superseded by statute, as stated in Kiss v. Jacob, 268 N.J.Super. 235, 633 A.2d 544 (1993)) with Snowden v. D.C. Transit System, Inc., 454 F.2d 1047 (D.C.Cir.1971); McComber v. Wells, 85 Cal.Rptr.2d 376, 72 Cal.App.4th 512 (1999); Mulinix v. Saydel Consol. School Dist., 376 N.W.2d 109 (Iowa App.1985); and Duncan v. Pennington County Housing Auth., 283 N.W.2d 546 (S.D.1979) (allowing setoff). Dean Prosser states that the majority rule is to allow a setoff:
"The prevailing view, with some authority to the contrary, is that [the amount of a release paid to the plaintiff by an alleged joint tortfeasor] must be ... credited even where the person released was not in fact a joint tortfeasor, or was not liable to the plaintiff at all."
W. Prosser, Handbook of the Law of Torts § 49 at 305 (4th ed.1971).
The setoff rule applies, as we have stated, only to joint tortfeasors. See Bucyrus-Erie Co. v. Von Haden, supra; Anderson v. Kemp, supra; Ex parte Martin, supra. How then, do the decisions that permit a credit for a settlement by one who, like Herbstreith, has been judicially determined not to have been liable to the plaintiff, rationalize applying a rule made for joint tortfeasors to one who is clearly not a tortfeasor?
Some jurisdictions conclude that whether the settling party is actually liable in tort to the plaintiff is immaterial. See, e.g., Layne v. United States, 460 F.2d 409, 411 (9th Cir.1972). Other jurisdictions hold that a settling party, irrespective of his actual liability to the plaintiff, is a joint tortfeasor for purposes of applying a setoff, if he was sued, see, e.g., Levi v. Montgomery, 120 N.W.2d 383 (N.D.1963); Duncan v. Pennington County Housing Auth., supra, or could have been sued, see Mulinix v. Saydel Consol. School Dist., 376 N.W.2d at 110, by the plaintiff. In Levi v. Montgomery, the Supreme Court of North Dakota held:
"Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tort-feasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant. The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is wholly immaterial."
120 N.W.2d at 389 (quoted in Duncan v. Pennington County Housing Auth., 283 N.W.2d at 551).
Most jurisdictions, however, overcome the joint-tortfeasor rule by relying on what they consider to be weightier principles of law, logic, or public policy. For example, the decisions allowing a setoff uniformly rely on the one-satisfaction and prevention-of-unjust-enrichment rules referred to by Goldsen. See, e.g., Snowden v. D.C. Transit System, Inc., supra; McKenna v. Austin, 134 F.2d 659, 664 (D.C.Cir.1943). In Snowden, a passenger was injured on a bus that collided with an automobile. The passenger sued the bus company and the driver of the automobile. During trial, the plaintiff settled with the driver of the automobile for $5,000. The jury returned a verdict against the bus company for $12,500, and found that the driver of the automobile was not liable. The United States Court of Appeals for the District of Columbia Circuit held that the bus company was entitled to set off the $5,000 settlement, *50 notwithstanding the fact that the settling driver was determined not to have been a tortfeasor. The court applied the "cardinal principle of law" that "in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." Snowden, 454 F.2d at 1048. Citing McKenna v. Austin, supra, the court stated that an "injured person may [not] have more than full satisfaction.... He has no right to make profit from his harm because several share in causing it." Id.
Some jurisdictions that disallow a setoff respond to the one-satisfaction and prevention-of-unjust-enrichment arguments by holding that a settlement simply does not fall within the rule aimed at preventing unjust enrichment because, they conclude, a settlement is a gratuity from a collateral source that does not reduce the amount of the judgment. See, e.g., Carruba v. Speno, 418 S.W.2d 398, 402 (Ky.1967). That position, however, has been criticized as unrealistic. The United States Court of Appeals for the District of Columbia Circuit stated:
"A settlement made by one liable potentially, but not in fact, is made under Damoclean pressure, not gratuitously. The collateral source rule which applies to gratuitous or pre-planned benefits such as insurance or sick pay cannot be tortured to encompass the settlement made [by the driver of a vehicle involved in an automobile collision]."
Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049.
Other jurisdictions hold that a plaintiff who receives both a settlement and a judgment unreduced by the amount of the settlement has not obtained a double recovery. Instead, they consider that the plaintiff merely obtained a favorable settlement by "selling" or relinquishing any claims he had against the settling entity. See Leger v. Drilling Well Control, Inc., 592 F.2d 1246, 1250 (5th Cir.1979), questioned on other grounds by Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540 (11th Cir.1987), and quoted with approval by the Alabama Supreme Court in Amerada Hess Corp. v. Owens-Corning Fiberglass Corp., 627 So.2d 367, 373 (Ala.1993).
In support of allowing a setoff, some courts have expressed the belief that allowing a setoff "reduces the potential anomaly of a plaintiff's `benefiting by losing at trial to tortfeasors with whom he [or she] has settled,'" Berg v. Footer, 673 A.2d at 1249 (quoting Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049) (bracketed material added in Berg), and discourages "potential chicanery on the part of plaintiffs." Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049.
"The [Snowden] court apparently was concerned that a plaintiff might collude with a potentially liable settling defendant to impose the greater liability on another defendant who had greater resources or against whom the plaintiff had more spiteful feelings."
Berg v. Footer, 673 A.2d at 1249.
We think an equally strong public-policy argument can be made for disallowing a setoff, namely, that setoffs should be disallowed so as to encourage settlements by all parties. In Domingue v. Luke Fruge, Inc., the Louisiana court recognized that allowing a nonsettling defendant to reduce his liability by the amount of a settling defendant's payment to the plaintiff tends to reward the nonsettling defendant "for its intransigence or miscalculation in refusing to settle the case." Domingue, 379 So.2d at 493. See also Amerada Hess Corp. v. Owens-Corning Fiberglass Corp., 627 So.2d at 373-74 (noting, in a maritime action, the policy of the federal courts favoring settlements).
*51 The decisions permitting a setoff often cite fairness to the plaintiff and to the settling entity as a reason for allowing a reduction of the plaintiff's verdict. They point out that by crediting the settlement against the verdict, the plaintiff obtains full satisfaction for his injuries and the settling entity is not forced to make any additional payment. See, e.g., Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049.
In our judgment, the fairness and unjust-enrichment arguments are persuasive when applied to the plaintiff and to the settling entity, but are not convincing when applied to the nonsettling tortfeasor. When settlement proceeds derived from one who is not a tortfeasor are deducted from a plaintiff's verdict against a tortfeasor, it is the tortfeasor who obtains a windfall and is unjustly enriched. We agree with the following observation of the Court of Appeals for the District of Columbia:
"[A] plaintiff's good fortune in striking a favorable bargain with one [potential] defendant gives [another] defendant[] no claim to pay less than [what the jury determined was the nonsettling defendant's sole responsibility]."
Berg v. Footer, 673 A.2d at 1256. See also Anunti v. Payette, 268 N.W.2d at 56 ("it would be inequitable to allow ... the nonsettling defendant to profit from a settlement agreement between plaintiffs and [the settling defendant] by reducing the amount of his own individual liability").
The proceeds of a settlement by one who has been determined not to be a tortfeasor will always benefit someoneeither the plaintiff (if the settlement is not deducted from the verdict) or the nonsettling tortfeasor (if the settlement is deducted from the verdict). Given the choice, we believe it is preferable to reward the plaintiff for successful negotiation of her claim rather than to benefit the only party found liable for the plaintiff's injuries. We agree with the following conclusion by the New Jersey Superior Court:
"[I]deally, a claimant should not receive more than one satisfaction for a wrong, [but] when the situation arises in which additional enrichment must necessarily flow to someone, the more just result is to have the person wronged receive the benefit and not a wrongdoer."
Rogers v. Spady, 147 N.J.Super. at 277, 371 A.2d at 287.
After weighing the legal arguments and policy considerations on each side of the issue, we conclude that the minority rule disallowing a setoff is the better-reasoned position. Goldsen argues that the decisions on which we rely for following the minority rule are comparative-negligence cases from jurisdictions that (unlike Alabama) (1) allow apportionment of fault among joint tortfeasors, (2) recognize contribution among joint tortfeasors, and require that a verdict against a nonsettling tortfeasor be reduced by the pro rata or proportionate share attributable to the settling tortfeasor.
We, of course, recognize that the authorities we have cited are products of comparative-negligence jurisprudence. We also recognize that, in the absence of Alabama authority, there are no authorities other than comparative-negligence jurisdictions. We do not cite the decisions from those jurisdictions for propositions relating to apportionment and contribution among joint tortfeasors, but for the proposition that when a settling defendant is not a tortfeasor, then any windfall should accrue to the injured plaintiff rather than to a negligent-nonsettling defendant. We, therefore, affirm the trial court's judgment denying the setoff.
*52 OPINION OF DECEMBER 10, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; RULE 39(k) MOTION DENIED; AFFIRMED.
ROBERTSON, P.J., concurs specially.
YATES, J., concurs in the result.
MONROE and THOMPSON, JJ., dissent.
ROBERTSON, Presiding Judge, concurring specially.
I concur in the affirmance. As the Alabama Supreme Court has stated, "[i]t is the policy of the law to encourage the settlement of disputes." Large v. Hayes, 534 So.2d 1101, 1105 (Ala.1988). If tortfeasors were allowed to reduce an award of damages by setting off recoveries obtained as a result of settlements with parties that are not at fault, plaintiffs would have no incentive to agree to settle their claims against such parties, contrary to the policy favoring settlements.
MONROE, Judge, dissenting.
This case is unique, to say the least. But I believe that the issues have been made overly complicated both at trial and here. Because I would reverse the judgment denying the setoff, I must respectfully dissent.
I think we are all in agreement that in a typical case involving joint tortfeasors, one of the tortfeasors is entitled to a setoff of any pro tanto settlement reached by the plaintiff and the other tortfeasor.
"It is well settled that a person injured by joint tortfeasors may release one or more pro tanto and proceed against the others. The tortfeasors may plead the release as a bar to that amount paid by the released tortfeasor or may place it in evidence showing payment for the injury up to the amount shown in the release."
Bucyrus-Erie Co. v. Von Haden, 416 So.2d 699, 702 (Ala.1982).
In this case, three people were involved in a three-car accidentSimpson, Herbstreith, and Goldsen. Before litigation began, Herbstreith entered into a pro tanto settlement with Simpson for $20,000. Simpson then sued Goldsen, claiming Goldsen had negligently caused the car accident, an accident in which Simpson sustained damage; Herbstreith was not a party to that lawsuit. At this point, this case is like any other case where one joint tortfeasor has reached a pro tanto settlement with the plaintiff. The money paid in the settlement is then used to offset the amount of total damages, if any, a jury determines the plaintiff is entitled to because of the negligence of the tortfeasor who did not settle. See, e.g., John Crane-Houdaille, Inc. v. Lucas, 534 So.2d 1070 (Ala.1988). If the jury determines that the other tortfeasor is not liable, the settlement represents the entire amount recovered by the plaintiff.
The case went to trial. As in most car-accident cases, the issues were whether the defendant, Goldsen, was negligent, and, if so, what was the amount of Simpson's damages for which she is liable. However, the jury's verdict form asked the jury to first determine whether Herbstreith a nonpartywas negligent. The jury then was to determine whether Goldsen was negligent, and, if so, then determine the damages Simpson was entitled to.
The jury returned a verdict finding that Herbstreith was not negligent but that Goldsen was. It also found that Simpson had sustained $76,898.39 in damage. The record shows that the trial court instructed the jury to put on the jury form "what ... you determine the damages of Ms. Simpson to be, if you determine that there *53 are damages." The jury was not instructed to consider damages over and above the $20,000 she already had received, or to deduct $20,000 from the total amount of damage it found Simpson had sustained. Therefore, we must conclude that the jury found that Simpson sustained total damage of $76,898.39.
Simpson argues that because the jury determined that Herbstreith was not liable for negligence, the $20,000 he paid as a settlement should not be offset against the jury's award of damages. I disagree.
As the main opinion points out,
"`[t]he prevailing view, with some authority to the contrary, is that [the amount of a release paid to the plaintiff by an alleged joint tortfeasor] must be... credited even where the person released was not in fact a joint tortfeasor, or was not liable to the plaintiff at all.'"
783 So.2d 46, 49 (quoting W. Prosser, Handbook of the Law of Torts § 49 at 305 (4th ed.1971)). The main opinion then asks, "How then, do the decisions that permit a credit for a settlement by one who, like Herbstreith, has been judicially determined not to have been liable to the plaintiff, rationalize applying a rule made for joint tortfeasors to one who is clearly not a tortfeasor?" 783 So.2d at 49 (emphasis in original).
I believe that question is based on an improper premise. The "judicial finding" that Herbstreith, a nonparty, was not negligent is irrelevant. We note that the parties agreed for the jury to return a general verdict accompanied by answers to interrogatories; however, I believe that the question of Herbstreith's negligence never should have been put before the jury. Once Herbstreith made the decision to settle with Simpson, the issue of his liability became moot.
I agree with that line of cases adhering to the "one-satisfaction" and "prevention-of-unjust-enrichment" rules in allowing the setoff. See, e.g., Snowden v. D.C. Transit System, Inc., 454 F.2d 1047 (D.C.Cir.1971). Our entire system of law is based upon the rationale behind those decisions, that is, "in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." Id. at 1048. I can see no valid reason to go against that rationale in this case.
The jury found that Simpson had suffered a total of $76,898.39 in damage as a result of the accident. Herbstreith had already paid $20,000 toward that amount. To require Goldsen to pay the entire $76,898.39 would result in Simpson's being unjustly enriched. I would reverse the judgment of the trial court denying Goldsen a setoff of $20,000; therefore, I respectfully dissent.
THOMPSON, J., concurs.