766 So.2d 418 (2000)
J. Alan SCHNEPEL, Appellant,
v.
John M. GOUTY, Appellee.
No. 1D99-1337.
District Court of Appeal of Florida, First District.
August 25, 2000.
*419 Harris Brown and Tonia Yazgi of Brown, Obringer, Beardsley & DeCandio, P.A., Jacksonville, for Appellant.
Edward McCarthy, III, Jacksonville, for Appellee.
BENTON, J.
Injured by a bullet fired from J. Alan Schnepel's gun, John M. Gouty sued both the gun owner and its manufacturer, Glock, Inc. (Glock). Before the trial began, he received $137,500 for dismissing his claim against Glock. Motions on that account to reduce damages awarded against Mr. Schnepel were denied. We now reverse with directions that the trial court set off a portion of the settlement proceeds against the economic damages awarded.
We nevertheless certify as a question of great public importance the following:
WHERE THE PLAINTIFF HAS DELIVERED A WRITTEN RELEASE OR COVENANT NOT TO SUE TO A SETTLING DEFENDANT ALLEGEDLY JOINTLY AND SEVERALLY LIABLE FOR ECONOMIC DAMAGES, SHOULD THE SETTLEMENT PROCEEDS APPORTIONABLE TO ECONOMIC DAMAGES BE SET OFF AGAINST ANY AWARD FOR ECONOMIC DAMAGES EVEN IF THE SETTLING DEFENDANT IS NOT FOUND LIABLE?
Preliminarily, we decline to address the merits of Mr. Schnepel's argument that the trial court erred in denying his motion for new trial. The motion asserts that Mr. Gouty was "judicially estopped," because he sued then settled with Glock, from taking the position at trial that Glock's negligence was in no way responsible for his injury. See generally Lambert v. Nationwide Mut. Fire Ins. Co., 456 So.2d 517 (Fla. 1st DCA 1984)(precluding party who had settled a wrongful death action brought in Alabama against three alleged tortfeasors from taking the inconsistent position in a Florida action that only one of the three was negligent). The estoppel question was also the subject of a pretrial order. But the trial transcript is not part of the record before us, see Phillips v. State, 476 So.2d 194, 196 (Fla.1985)(requiring objection at trial notwithstanding denial of motion in limine); Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979)("The trial court should have been affirmed because the record brought forward by the appellant is inadequate to demonstrate reversible error."), and we note that Mr. Gouty's amended complaint stated a claim against *420 Glock on strict liability, as well as negligence, theories.
In the absence of a contrary agreement among all parties, one effect of the verdict was "to apportion settlement proceeds between economic and non-economic damages for purposes of calculating a nonsettling defendant's obligation." Wells v. Tallahassee Mem'l Reg'l Med. Ctr., 659 So.2d 249, 253 (Fla.1995). The jury found that the bullet (which reportedly hit him in the left arm and fractured his humerus) caused Mr. Gouty total damages in the amount of $250,000. Of this, the verdict designated $125,000 economic damages. The settlement proceeds ($137,500) were thus apportioned by law half to economic damages ($68,750) and half to non-economic damages ($68,750).
A party is "liable for non-economic damages in proportion to the percentage of fault by which that party contributed to the accident," id., as determined by the jury. See § 768.81(3), Fla. Stat. (1997). As to non-economic damages, Mr. Schnepel was adjudged solely responsible for all $125,000 because the jury found him at fault and exonerated Glock altogether. Even though Glock had already paid Mr. Gouty $68,750 allocable to non-economic damages, no setoff was allowed because "the setoff provisions do not apply to noneconomic damages for which defendants are only severally liable." Wells, 659 So.2d at 253.
As to economic damages, however, the trial court necessarily entered judgment "on the basis of the doctrine of joint and several liability." § 768.81(3), Fla. Stat. (1997). The statute so requires. "Of course, the setoff statutes do apply to economic damages for which parties continue to be subject to joint and several liability." Wells, 659 So.2d at 253. With respect to the $125,000 comprising economic damages, Mr. Schnepel is "liable for those economic damages remaining after the settlement proceeds apportionable to economic damages are set off." Id. at 254. Half the settlement proceeds, or $68,750, should therefore be set off against the $125,000 awarded for economic damages, reducing the total award from $250,000 to $181,250. On remand, the trial court should enter judgment in this amount.
We reject any argument implying that justice would be better served if Mr. Gouty received $387,500 ($137,500 + $250,000) instead of $318,750 ($137,500 + $181,250) as compensation for an injury the jury found damaged him in the amount of $250,000. Mr. Gouty relies on Goldsen v. Simpson, ___ So.2d ___, 2000 WL 432856 (Ala.Civ.App. Apr.21, 2000) and cases cited therein. Reversing itself on rehearing and dealing with the setoff issue as an open, common-law question, the Goldsen court opined:
"Whether the operation of a release of one person from liability for a tort, upon the liability of another for the same injury, is affected by the fact that the person so released was not in fact or law liable, is a question upon which the decisions are regarded as conflicting...." 66 Am.Jur.2d Release § 42 at 724 (1973) Compare, e.g., Domingue v. Luke Fruge, Inc., 379 So.2d 490 (La.App. 1979); Anunti v. Payette, 268 N.W.2d 52 (Minn.1978); and Rogers v. Spady, 147 N.J.Super. 274, 371 A.2d 285 (1977) (disallowing setoff) ... with Snowden v. D.C. Transit System, Inc., 454 F.2d 1047 (D.C.Cir.1971); McComber v. Wells, 85 Cal.Rptr.2d 376, 72 Cal.App.4th 512 (1999); Mulinix v. Saydel Consol. School Dist., 376 N.W.2d 109 (Iowa App. 1985); and Duncan v. Pennington County Housing Auth., 283 N.W.2d 546 (S.D.1979) (allowing setoff). Dean Prosser states that the majority rule is to allow a setoff:
"The prevailing view, with some authority to the contrary, is that [the amount of a release paid to the plaintiff by an alleged joint tortfeasor] must be ... credited even where the person released was not in fact a joint tortfeasor, or was not liable to the plaintiff at all." *421 W. Prosser, Handbook of the Law of Torts § 49 at 305 (4th ed.1971)....
Some jurisdictions conclude that whether the settling party is actually liable in tort to the plaintiff is immaterial. See, e.g., Layne v. United States, 460 F.2d 409, 411 (9th Cir.1972). Other jurisdictions hold that a settling party, irrespective of his actual liability to the plaintiff, is a joint tortfeasor for purposes of applying a setoff, if he was sued, see, e.g., Levi v. Montgomery, 120 N.W.2d 383 (N.D.1963); Duncan v. Pennington County Housing Auth., supra, or could have been sued, see Mulinix v. Saydel Consol. School Dist., 376 N.W.2d at 110, by the plaintiff. In Levi v. Montgomery, the Supreme Court of North Dakota held:
"Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tort-feasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant. The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is wholly immaterial."
120 N.W.2d at 389 (quoted in Duncan v. Pennington County Housing Auth., 283 N.W.2d at 551).
Most jurisdictions, however, overcome the joint-tortfeasor rule by relying on what they consider to be weightier principles of law, logic, or public policy. For example, the decisions allowing a setoff uniformly rely on the one-satisfaction and prevention-of-unjust-enrichment rules referred to by Goldsen. See, e.g., Snowden v. D.C. Transit System, Inc., supra; McKenna v. Austin, 134 F.2d 659, 664 (D.C.Cir.1943). In Snowden, a passenger was injured on a bus that collided with an automobile. The passenger sued the bus company and the driver of the automobile. During trial, the plaintiff settled with the driver of the automobile for $5,000. The jury returned a verdict against the bus company for $12,500, and found that the driver of the automobile was not liable. The United States Court of Appeals for the District of Columbia Circuit held that the bus company was entitled to set off the $5,000 settlement, notwithstanding the fact that the settling driver was determined not to have been a tortfeasor. The court applied the "cardinal principle of law" that "in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." Snowden, 454 F.2d at 1048. Citing McKenna v. Austin, supra, the court stated that an "injured person may [not] have more than full satisfaction.... He has no right to make profit from his harm because several share in causing it." Id.

Some jurisdictions that disallow a setoff respond to the one-satisfaction and prevention-of-unjust-enrichment arguments by holding that a settlement simply does not fall within the rule aimed at preventing unjust enrichment because, they conclude, a settlement is a gratuity from a collateral source that does not reduce the amount of the judgment. See, e.g., Carruba v. Speno, 418 S.W.2d 398, 402 (Ky.1967). That position, however, has been criticized as unrealistic.... Other jurisdictions hold that a plaintiff who receives both a settlement and a judgment unreduced by the amount of the settlement has not obtained a double recovery. Instead, they consider that the plaintiff merely obtained a favorable settlement by "selling" or relinquishing any claims he had against the settling entity. See Leger v. Drilling Well Control, Inc., 592 F.2d 1246, 1250 (5th Cir. 1979), questioned on other grounds by Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540 (11th Cir.1987), and quoted with approval by the Alabama Supreme Court in Amerada Hess Corp. v. *422 Owens-Corning Fiberglass Corp., 627 So.2d 367, 373 (Ala.1993).
In support of allowing a setoff, some courts have expressed the belief that allowing a setoff "reduces the potential anomaly of a plaintiff's `benefiting by losing at trial to tortfeasors with whom he [or she] has settled,'" Berg v. Footer, 673 A.2d at 1249 (quoting Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049) (bracketed material added in Berg), and discourages "potential chicanery on the part of plaintiffs." Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049.
"The [Snowden] court apparently was concerned that a plaintiff might collude with a potentially liable settling defendant to impose the greater liability on another defendant who had greater resources or against whom the plaintiff had more spiteful feelings."

Berg v. Footer, 673 A.2d at 1249.
We think an equally strong public-policy argument can be made for disallowing a setoff, namely, that setoffs should be disallowed so as to encourage settlements by all parties. In Domingue v. Luke Fruge, Inc., the Louisiana court recognized that allowing a nonsettling defendant to reduce his liability by the amount of a settling defendant's payment to the plaintiff tends to reward the nonsettling defendant "for its intransigence or miscalculation in refusing to settle the case." Domingue, 379 So.2d at 493. See also Amerada Hess Corp. v. Owens-Corning Fiberglass Corp., 627 So.2d at 373-74 (noting, in a maritime action, the policy of the federal courts favoring settlements).
The decisions permitting a setoff often cite fairness to the plaintiff and to the settling entity as a reason for allowing a reduction of the plaintiffs verdict. They point out that by crediting the settlement against the verdict, the plaintiff obtains full satisfaction for his injuries and the settling entity is not forced to make any additional payment. See, e.g., Snowden v. D.C. Transit System, Inc., 454 F.2d at 1049.
In our judgment, the fairness and unjust-enrichment arguments are persuasive when applied to the plaintiff and to the settling entity, but are not convincing when applied to the nonsettling tortfeasor. When settlement proceeds derived from one who is not a tortfeasor are deducted from a plaintiffs verdict against a tortfeasor, it is the tortfeasor who obtains a windfall and is unjustly enriched. We agree with the following observation of the Court of Appeals for the District of Columbia:
"[A] plaintiff's good fortune in striking a favorable bargain with one [potential] defendant gives [another] defendant[] no claim to pay less than [what the jury determined was the nonsettling defendant's sole responsibility]."

Berg v. Footer, 673 A.2d at 1256. See also Anunti v. Payette, 268 N.W.2d at 56 ("it would be inequitable to allow ... the nonsettling defendant to profit from a settlement agreement between plaintiffs and [the settling defendant] by reducing the amount of his own individual liability").
The proceeds of a settlement by one who has been determined not to be a tortfeasor will always benefit someoneeither the plaintiff (if the settlement is not deducted from the verdict) or the nonsettling tortfeasor (if the settlement is deducted from the verdict). Given the choice, we believe it is preferable to reward the plaintiff for successful negotiation of her claim rather than to benefit the only party found liable for the plaintiffs injuries....
After weighing the legal arguments and policy considerations on each side of the issue, we conclude that the minority rule disallowing a setoff is the better-reasoned position. Goldsen argues that the decisions on which we rely for following the minority rule are comparative-negligence cases from jurisdictions that (unlike Alabama) (1) allow apportionment of *423 fault among joint tortfeasors, (2) recognize contribution among joint tortfeasors, and require that a verdict against a nonsettling tortfeasor be reduced by the pro rata or proportionate share attributable to the settling tortfeasor.
We, of course, recognize that the authorities we have cited are products of comparative-negligence jurisprudence. We also recognize that, in the absence of Alabama authority, there are no authorities other than comparative-negligence jurisdictions. We do not cite the decisions from those jurisdictions for propositions relating to apportionment and contribution among joint tortfeasors, but for the proposition that when a settling defendant is not a tortfeasor, then any windfall should accrue to the injured plaintiff rather than to a negligent-nonsettling defendant.
Goldsen, ___ So.2d at ___ _ ___, 2000 WL 432856, at 2-5. The Florida Legislature did not leave the matter for judicial decision according to the common law. We need not, therefore, decide how we might have answered the question confronting the Alabama courts, "weighing the legal arguments and policy considerations on each side of the issue." We have a different question to decide in the present case, a question of statutory construction.
Wells held that Florida's setoff statutes, sections 46.015(2) and 768.041(2), Florida Statutes (1997), not common law, controlled setoff questions pertaining to economic damages recovered in negligence suits. The setoff statutes focus on whether a release has been given in partial satisfaction of the damages sued for. Section 46.015(2), Florida Statutes (1997), provides:
At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.
(Emphasis supplied.) Similarly, section 768.041(2), Florida Statutes (1997), provides:
At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
(Emphasis supplied.) In accord with the "prevailing view," judicial determination of a settling (potential) defendant's fault is immaterial under Florida's setoff statutes. See W. Prosser, Handbook of the Law of Torts § 49 at 336 (5th ed. 1971)("The prevailing view [requires a setoff] ... even where the person released was not in fact a joint tortfeasor, or was not liable to the plaintiff at all.").
Applying setoff statutes, not unlike those of Florida, in connection with a comparative negligence statute which, like Florida's, preserves joint and several liability for certain economic damages, a California court recently reiterated the holding that
a non-settling defendant [is] entitled to a setoff from plaintiff's award of economic damages in the amount of settlements paid prior to trial by other defendants, despite the jury's finding that the settling defendants had no fault for plaintiff's injuries[.]
McComber v. Wells, 72 Cal.App.4th 512, 85 Cal.Rptr.2d 376, 378 (1999) (quoting Poire v. C.L. Peck/Jones Bros. Constr. Corp., 39 Cal.App.4th 1832, 46 Cal. Rptr.2d 631, 634 (1995)). Today's result also comports with the Second Restatement of the Law of Torts, which provides:

*424 A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.
Restatement (Second) of Torts § 885(3) (1977) (emphasis supplied). While the setoff statutes can be said to "presuppose the existence of multiple defendants jointly liable for the same damages," Wells, 659 So.2d at 253, determining whether a settling (potential) defendant is liable is left entirely to the plaintiff and the (potential) defendant to whom the plaintiff gives a release.
Here Glock was sufficiently concerned that the jury would find it liable for some portion of Mr. Gouty's damages that it paid him $137,500 in exchange for a release. See Snowden v. D.C. Transit Sys., Inc., 454 F.2d 1047, 1049 (D.C.Cir.1971) ("[S]ettlement made by one liable potentially, but not in fact, is made under Damoclean pressure, not gratuitously."). Because Glock overestimated its liability (as gauged by the jury's subsequent verdict at a trial in which Glock did not participate), Mr. Schnepel benefitted. But Glock is in no position to complain, bound as it is by the settlement agreement it struck.
If, moreover, Glock had underestimated its liability (and secured Mr. Gouty's release in exchange for "underpayment"), Glock would have benefitted at Mr. Schnepel's expense because he would have become responsible for more than his share of the economic damages. See generally Woods v. Withrow, 413 So.2d 1179, 1183 (Fla.1982) (construing contribution statute to foreclose claims by one joint tortfeasor against another "tortfeasor who settles without extinguishing the entire liability... [even though his] payment later turns out to be less than his full share"). A certain symmetry thus argues in favor of the result we reach today.
More importantly, Mr. Gouty could expect full recovery for economic damages under either scenario. Whether the settlement was "too high" or "too low," he would be awarded the full amount of the economic damages the jury determined he had sustained less only a setoff for economic damages already paid him. For this reason, we have no qualms about giving effect to the legislative intent expressed in sections 46.015(2) and 768.041(2), Florida Statutes (1997), as Wells contemplates. Most importantly and determinative is the clear statutory language that rejects the minority common-law view Mr. Gouty espouses.
Reversed and remanded.
BROWNING, J., CONCURS; VAN NORTWICK, J., CONCURS IN PART AND DISSENTS IN PART.
VAN NORTWICK, J., concurring, in part, and dissenting, in part.
The set-off issue confronting us here presents what Justice Wells has described as "one of the myriad of imponderable [post-Fabre[1]] reconciliations between common law and statutory law that have plagued the proper administration of justice in tort cases...." Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249, 255 (Fla.1995)(Wells, J., concurring specially). I conclude that the majority opinion's interpretation of sections 46.015(2) and 768.041(2), Florida Statutes (1997), to require a set-off of settlement proceeds where the jury finds the settling defendant without liability is contrary to the construction of those statutes in Wells. Accordingly, I must respectfully dissent to the holding of the majority opinion on the set-off issue. I concur with the majority's holding on the judicial estoppel issue.
*425 In Wells, the supreme court interpreted sections 46.015(2) and 768.041(2), Florida Statutes, holding that those set-off statutes do not apply to noneconomic damages, but do apply to economic damages for which parties continue to be subject to joint and several liability. Wells, 659 So.2d at 253. The Wells court based this holding on the rationale that the set-off statutes "presuppose the existence of multiple defendants jointly liable for the same damages." Id. (emphasis added). Under Wells, it is the actual "existence," not the mere allegation, of joint and several liability that is the foundation of the application of the set-off statutes. Here, the jury has found that Schnepel is 100% at fault. Thus, there can be no joint and several liability as between Schnepel and Glock. Accordingly, under the rationale of Wells, set-off would be inappropriate in the case before us.
In the briefs and oral argument much was made about whether either Schnepel or Gouty would receive a windfall by virtue of the application of the proceeds of Gouty's settlement with Glock. Schnepel argues that, if no set-off is required, Gouty, in effect, would receive a "double recovery" by virtue of the settlement and the judgment. The majority agrees. On the other hand, Gouty argues that, if a set-off is mandated, Schnepel, the tortfeasor, would receive a windfall from the settlement.
Obviously, either Gouty or Schnepel must benefit from the settlement with Glock. Logically, it would seem preferable to have the person who was injured and who successfully negotiated the settlement, rather than a tortfeasor, obtain the benefit. See Rogers v. Spady, 147 N.J.Super. 274, 278, 371 A.2d 285, 288 (App.Div. 1977), superseded by statute as stated in, Kiss v. Jacob, 268 N.J.Super. 235, 633 A.2d 544 (App.Div.1993)("[I]deally a claimant should not receive but more than one satisfaction for a wrong, [but] when the situation arises in which additional enrichment must necessarily flow to someone, the more just result is to have the person wronged receive the benefit and not a wrongdoer."); and Berg v. Footer, 673 A.2d 1244, 1256 (D.C.1996)("a plaintiff's good fortune in striking a favorable bargain with one defendant gives [another] defendant[ ] no claim to pay less"); see also Goldsen v. Simpson, ___ So.2d ___, 2000 WL 432856 (Ala.Civ.App.2000). Further, requiring a set-off under these circumstances clearly works to discourage a plaintiff from partially settling a case with less than all of several defendants who have potential joint and several liability. Such a result is contrary to the public policy of Florida to encourage settlements. See JFK Med. Ctr., Inc. v. Price, 647 So.2d 833, 834 (Fla.1994).
I would affirm the order of the trial court.
NOTES
[1] Fabre v. Marin, 623 So.2d 1182 (Fla.1993).