678 So.2d 447 (1996)
Helen LAUTH, By and Through her Plenary Guardian, Lorraine GADANSKY, Appellant,
v.
OLSTEN HOME HEALTHCARE, INC., d/b/a Olsten Kimberly Qualitycare, a foreign corporation, Appellee.
No. 95-02693.
District Court of Appeal of Florida, Second District.
August 9, 1996.
Gregory S. Roe of Gregory S. Roe, P.A., Tampa, for Appellant.
Paul E. Berg of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Clearwater, for Appellee.
RYDER, Acting Chief Judge.
Helen Lauth, through her plenary guardian, challenges the trial court's order which set off the settlement proceeds received from defendants McIntosh Manor, Inc. (McIntosh Manor) and DHS Medical Management Corporation (DHS) against the $329,219.68 jury verdict against Olsten Home Healthcare, Inc. (Olsten) in its entirety. We reverse the setoff of the settlement proceeds received from McIntosh Manor. Safecare Health Corp. v. Rimer, 620 So.2d 161 (Fla.1993), applies to bar any setoff against the verdict rendered against Olsten, her health care provider, of the settlement of her claim against McIntosh Manor, an Adult Congregate Living Facility (ACLF), for the violation of a resident's rights pursuant to section 400.429, Florida Statutes (1993). We otherwise affirm the setoff of the DHS settlement proceeds.
Mrs. Lauth resided at McIntosh Manor from August 1, 1992 until February 1, 1993. From October 12, 1992 until November 30, 1992, DHS provided home health care services for the appellant, and from December *448 1, 1992 until February 1, 1993, Olsten exclusively provided limited nursing services for her. The appellant's complaint alleged that as a result of Olsten's and DHS's negligence as health care providers governed by those standards set forth under Chapter 766, Florida Statutes (1993), she sustained bodily injuries, resulting pain and medical expenses from the loss of weight, development of decubitus ulcers, inability to ambulate, urinary tract infections, fevers and overall deterioration. She further alleged that during the period that Olsten provided nursing care, she additionally suffered fevers, weight loss and leg and feet contractures. The appellant prayed for compensatory and punitive damages from DHS and Olsten.
Prior to the onset of litigation, the appellant's counsel notified McIntosh Manor's insurer of the appellant's injuries from her care and treatment at the ACLF. In addition to describing the injuries she received, her counsel also declared that McIntosh Manor violated provisions of Chapter 400, Florida Statutes (1993), and the Florida Administrative Code when it failed to transfer the appellant to an appropriate facility to care for more severe decubitus ulcers. For this conduct, the Department of Health and Rehabilitative Services cited McIntosh Manor. The appellant's counsel also informed McIntosh Manor's insurer that he expected a trial to result in compensatory and punitive damages. The appellant executed a release in favor of McIntosh Manor in consideration of a settlement in the amount of $299,900.00.
Before the execution of the release in final settlement with McIntosh Manor, the probate court approved the settlement and conditioned the approval upon the application of the proceeds to noneconomic damages. After notifying McIntosh Manor of the probate court's conditional approval, its insurer delivered the settlement proceeds to the appellant. Prior to trial, the appellant also settled with DHS for $30,000.00.
The jury found that the appellant suffered $122,979.18 in past medical expenses, $186,240.00 in future medical expenses at present value, and $20,000.00 in past pain and suffering, a total verdict in the amount of $329,218.18. The jury also found Olsten thirty-five percent at fault, McIntosh Manor twenty percent at fault, the plenary guardian forty-five percent at fault, and DHS zero percent at fault.
Olsten subsequently filed a motion for setoff. After a hearing, the court, ruling that the appellant's medical negligence claim against Olsten and the appellant's settlement pursuant to section 400.429, Florida Statutes (1993), were not separate claims involving separate damages or injuries, granted the setoff. The court also ruled that Olsten was entitled to set off the entire DHS settlement. This timely appeal ensued.
When a plaintiff has separate claims, a setoff is inappropriate. Safecare Health Corp., 620 So.2d 161; Gordon v. Marvin M. Rosenberg, D.D.S., P.A., 654 So.2d 643 (Fla. 4th DCA 1995). A separate and distinct claim is one that involves different elements of damages. 620 So.2d at 164.
A review of the claims made against McIntosh Manor and the different elements of damages is complicated by the fact that McIntosh Manor promptly settled the dispute prior to the filing of the complaint. Mrs. Lauth's counsel notified McIntosh Manor in his demand letter that it had violated provisions of section 400.401, et seq., Florida Statutes (1993), as well as the continuing admission standards set forth in 10A-5.0181(1)(e), Florida Administrative Code.[1] At the time of her admission, she had no bedsores, but, by the time of her discharge, she had developed Stage IV decubitus ulcers. Further, the evidence supports a conclusion that she became bedridden during her residency at McIntosh Manor. When she was admitted, she was ambulatory without assistance, but during December, 1992, she became dependent upon others to assist her from her bed, and in January, 1993, she became bedridden due to severe leg and feet contractures. By mid-January, 1993, a "no-code" order was given; she was near death. She never regained any ambulatory ability. The evidence supports her counsel's statements that the standards for continued admission *449 to the ACLF were violated, which constituted negligence per se. He further contended that McIntosh Manor intentionally disregarded the requirements that it make nursing home arrangements for Mrs. Lauth once she required the level of nursing care provided by Olsten. Section 400.429, Florida Statutes (1993), provides for civil actions to enforce residents' rights, including actual damages, and punitive damages when willful disregard of the rights of others can be shown. The claims of negligence per se and the intentional disregard of their duties to Mrs. Lauth are different from the medical malpractice claim asserted against Olsten. Thus, we reverse the setoff of the McIntosh Manor settlement proceeds against the jury's verdict.
We conclude that the $30,000.00 settlement from DHS was properly set off against the jury's verdict because the statute provides that "[a]t trial, if any defendant shows the court that the plaintiff ... has delivered a release or covenant not to sue to any ... corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly." § 768.041(2), Fla. Stat. (1993).
We, therefore, hold that the McIntosh Manor settlement proceeds were improperly set off against the jury verdict, but affirm the DHS settlement setoff. Accordingly, we affirm in part, reverse in part and remand the final judgment to the trial court to enter a judgment consistent with this opinion.
PARKER and LAZZARA, JJ., concur.
NOTES
[1] This regulation presently appears at 58A-5.0181(1)(e), Florida Administrative Code.