795 So.2d 959 (2001)
John GOUTY, Petitioner,
v.
J. Alan SCHNEPEL, Respondent.
No. SC00-1853.
Supreme Court of Florida.
September 13, 2001.
*960 Edward McCarthy, III of Rogers, Towers, Bailey, Jones & Gay, P.A., Jacksonville, FL, for Petitioner.
Harris Brown of Brown, Obringer, Beardsley & Decandio, P.A., Jacksonville, FL, for Respondent.
PARIENTE, J.
We have for review a decision of the First District Court of Appeal on the following question, which the court certified to be of great public importance:
WHERE THE PLAINTIFF HAS DELIVERED A WRITTEN RELEASE OR COVENANT NOT TO SUE TO A SETTLING DEFENDANT ALLEGEDLY JOINTLY AND SEVERALLY LIABLE FOR ECONOMIC DAMAGES, SHOULD THE SETTLEMENT PROCEEDS APPORTIONABLE TO ECONOMIC DAMAGES BE SET OFF AGAINST ANY AWARD FOR ECONOMIC DAMAGES EVEN IF THE SETTLING DEFENDANT IS NOT FOUND LIABLE?
Schnepel v. Gouty, 766 So.2d 418, 419 (Fla. 1st DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we answer the certified question in the negative and quash the First District's decision.

BACKGROUND
After being injured by a bullet from Respondent J. Alan Schnepel's gun, Petitioner John M. Gouty sued both Schnepel and Glock, Inc., the gun manufacturer. See Schnepel, 766 So.2d at 419. Before the trial began, Gouty received $137,500 in exchange for a release and dismissal of his claim against Glock. See id. However, Glock was listed on the verdict form for the purposes of apportioning fault.
The jury found Schnepel 100% liable and exonerated Glock altogether. See id. The jury assessed total damages in the amount of $250,000, designating $125,000 of the total amount of damages as economic damages. See id. Because Gouty had received a settlement from Glock, Schnepel filed a motion to reduce the verdict by the settlement amount received by Glock. The trial court denied the motion. See id.
The First District reversed. The court concluded that although the setoff provisions did not apply to the portion of the award attributable to noneconomic damages, Schnepel was entitled to the benefit of a setoff for the economic damages the jury awarded. See id. at 420. Relying in part on our decision in Wells v. Tallahassee Memorial Regional Medical Center, 659 So.2d 249 (Fla.1995), the First District focused upon whether a release had been *961 given in partial satisfaction of the damages Gouty sued for. See Schnepel, 766 So.2d at 423.
In a concurring in part and dissenting in part opinion, Judge Van Nortwick disagreed with the majority's conclusion that the setoff statutes permit a setoff for economic damages from a settling defendant that the jury found not to be liable. See id. at 424 (Van Nortwick, J., concurring in part, and dissenting in part). Judge Van Nortwick also relied on our decision in Wells, but concluded that it was the actual "existence," and not the mere allegation, of joint and several liability that was the foundation for the application of the setoff statutes. See id. at 425. Judge Van Nortwick reasoned that because the jury found Schnepel 100% at fault, there could not be joint and several liability between Schnepel and Glock. See id.

ANALYSIS
The core issue in this case is whether the setoff statutes may be used in circumstances where the jury finds a nonsettling defendant liable for economic damages, but finds that the settling defendant is not liable. Gouty contends that absent a finding of joint and several liability, the setoff statutes may not be applied to reduce a nonsettling defendant's payment for liability. For the reasons that follow, we agree with Gouty and hold that the setoff statutes are inapplicable to a settling defendant who is found to have no liability.
As in Wells, the setoff issue in this case requires us to reconcile the setoff statutes in light of changes in the doctrine of joint and several liability. At common law, under the doctrine of joint and several liability, all negligent defendants were held responsible for the total of the plaintiff's damages regardless of the extent of each defendant's fault in causing the accident. See Fabre v. Marin, 623 So.2d 1182, 1184 (Fla.1993) (citing Louisville & N. R.R. v. Allen, 67 Fla. 257, 65 So. 8 (1914)).
The enactment of section 768.81, Florida Statutes, represented a policy shift in the State of Florida from joint and several liability that resulted in a single recovery for the plaintiff to the apportionment of fault. Therefore, instead of each defendant being severally responsible for all of the plaintiffs damages, with limited statutory exceptions, the defendant is responsible only for the percentage of fault determined by the jury. See § 768.81, Fla. Stat. (2000). The version of section 768.81 in effect both at the time of the Wells decision and the First District's opinion in this case, provided in pertinent part:[1]
(3) Apportionment of damages.-In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
. . . .
(5) Applicability of joint and several liability.Notwithstanding the provisions of this section, the doctrine of joint and several liability applies to all actions *962 in which the total amount of damages does not exceed $25,000.
§ 768.81, Fla. Stat. (1997).
As this Court explained in Conley v. Boyle Drug Co., 570 So.2d 275, 285 (Fla. 1990):
[J]oint and several liability is only favored within this state in those limited circumstances set forth in sections 768.81(3), (4) and (5), Florida Statutes (1989). Under sections 768.81(3), (4) and (5), joint and several liability is abrogated except: 1) in cases of economic damages "with respect to any party whose percentage of fault equals or exceeds that of a particular claimant;" 2) in "any action brought by any person to recover actual economic damages resulting from pollution, to any action based upon an intentional tort, or to any cause of action as to which the doctrine of joint and several liability is specifically provided...;" and 3) as "to all actions in which the total amount of damages does not exceed $25,000."
In Wells, this Court analyzed the applicability of the setoff statutes in light of the abrogation of joint and several liability. 659 So.2d at 251. There, the plaintiff argued that where each party is only responsible for his or her share of the damages, payment by one tortfeasor should extinguish only that tortfeasor's liability and should have no effect on another tortfeasor's liability. See id. Thus, the plaintiff argued that the setoff statutes should be applicable only where there is a common liability. See id. Thus, the plaintiff contended that where a tortfeasor's liability is determined and assessed by the jury as a percentage of fault, the comparative fault statute would apply and the tortfeasor would not be entitled to a setoff. See id.
The defendant's position in Wells was that because the purpose of the setoff statutes was to prevent duplicate or overlapping recoveries, the abolition of joint and several liability should have no effect on this long-established prohibition against double recovery. Id. A contrary holding, the defendant asserted, would permit the plaintiff to recover an amount in excess of his or her damages. See id.
In reviewing both positions, we noted that in those states that have abrogated joint and several liability, the majority view refused to require a setoff of settlement amounts where the liability of the defendants is several rather than joint. Id. at 252. In explaining this reasoning, we quoted with approval from the Arizona Court of Appeals:
The single-recovery rule, which historically permitted defendants a credit for amounts paid in settlement by other defendants to prevent a plaintiff's excess recovery, was adopted when courts could not allocate liability among defendants; a settling defendant could only offer to pay for a plaintiff's entire, indivisible injury. Now, the respective shares of the liability of multiple defendants can be determined. Each defendant may settle his portion and such settlement neither affects the amount of harm caused by the remaining defendants nor the liability. The settling defendant simply has paid an agreed amount to "buy his peace" and the nonsettling defendant has no right to complain that the settling defendant paid too much.
Id. (quoting Neil v. Kavena, 176 Ariz. 93, 859 P.2d 203, 207 (Ct.App.1993)).
As to the suggestion that the plaintiff would receive a "windfall" if the total amount paid in settlement was not set off, we again quoted with approval from Neil:
Settlement dollars are not synonymous with damages but merely a contractual estimate of the settling tortfeasor's liability; they include not only damages but also the value of avoiding *963 the risk and expense of trial. Given these components of a settlement, "there is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages."
Wells, 659 So.2d at 252 (quoting Neil, 859 P.2d at 206).
After reviewing the applicable setoff statutes, we concluded that "[t]he setoff provisions, which were enacted before section 768.81, presuppose the existence of multiple defendants jointly liable for the same damages." Id. at 252-53 (emphasis supplied). Thus, in adopting the logic of the majority rule in those jurisdictions that have abrogated joint and several liability, we determined that the setoff statutes applied only where the liability continued to be joint and several.[2]See id. at 252-53.
Justice Anstead, in his specially concurring opinion in Wells, explained the interplay between the statutory schemes:
Sections 46.105(2), 768.31(5)(a), and 768.041(2) are actually parts of the legislative contribution scheme. Together they provide that settling tortfeasors may buy their "peace" with claimants in good faith settlements, and, in turn, receive immunity from contribution claims. In addition, they provide that the amount of the settlements must be applied to reduce any judgment that might be entered for the claimant against a remaining tortfeasor-defendant. Hence, the remaining tortfeasor-defendant, in effect, receives a "contribution" from the settling tortfeasor in the form of a reduction in the judgment for any damages the remaining tortfeasor-defendant may face. This is how the legislative *964 contribution scheme worked before the enactment of section 768.81(3).
With the enactment of section 768.81(3), the need for, and the role of, the contribution scheme set out above has been substantially reduced. Under section 768.81(3), a judgment is to be entered against a particular tortfeasor-defendant only "on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." Since this tortfeasor-defendant now faces a judgment based only on its "percentage of fault," it, unlike Disney in the Wood case, has no basis for seeking contribution from another tortfeasor who might also have contributed to the cause of the claimant's injury. Such a tortfeasor-defendant is no longer in need of or entitled to contribution, either by a claim against other tortfeasors, or by a reduction in the judgment entered against him in the amount of any settlements made by the claimant with other tortfeasors. Since the "problem" of a tortfeasor paying more than his fair share has been eliminated by the enactment of section 768.81(3), the "solution" to the problem by the scheme of contribution and setoff is no longer needed. The underlying purpose of the contribution scheme and sections 46.015(2), 768.31(5)(a), and 768.041(2) is simply no longer served in such a case. This is the essence of our decision today.
659 So.2d at 256 (Anstead, J., specially concurring). In other words, as long as a defendant does not pay more than his or her percentage of fault, that defendant is not entitled to contribution from another tortfeasor or entitled to a setoff from a settling defendant. However, if the defendant is required to pay damages on the basis of joint and several liability, that defendant's rights of contribution and setoff remain unchanged.
The Third District applied our decision in Wells in Metropolitan Dade County v. Frederic, 698 So.2d 291, 292 (Fla. 3d DCA 1997). In Frederic, the estate and family members of a vehicle passenger who was killed in a collision with a police vehicle brought a wrongful death action against both the county and the company that owned the vehicle. Id. The plaintiffs settled with the company for $25,000. See id. The jury awarded the plaintiffs damages, found the county 17.5% at fault, and found the decedent 55% at fault for failing to wear his seatbelt. See id.
The Third District reversed the trial court's finding that the county was jointly and severally liable for the $174,536 judgment. See id. The court concluded that pursuant to section 768.81(3), the county could not be held jointly and severally liable for economic damages because its percentage of fault was less than the decedent's percentage of fault and pursuant to section 768.81(5), the county could not be held jointly and severally liable for noneconomic damages because the total amount of damages exceeded $25,000. See id. Thus, the county was responsible for only 17.5% of the jury's award. See id. Moreover, in rejecting the county's argument that it was entitled to a setoff for the settlement with the limousine company, the Third District explained:
Following the guidelines announced in [Wells], we hold that the County is not entitled to a setoff based on the settlement. Wells specifies that "setoff provisions do not apply to noneconomic damages for which defendants are only severally liable[,]" and setoffs are only applicable to economic damages where the parties are "subject to joint and several liability." Id. The County is not jointly and severally liable for economic or noneconomic damages, hence it is not entitled to a setoff for the settlement. *965 Id. In other words, the Third District did not interpret Wells as creating an unbending rule that there was a setoff for economic damages but not for noneconomic damages. Rather, the Third District looked to the underlying rationale of Wells that the operation of the setoff statutes was premised upon the determination that the defendant was jointly and severally liable for the same damages.
In contrast to the Third District's decision in Frederic, in Lauth v. Olsten Home Healthcare, Inc., 678 So.2d 447, 449 (Fla. 2d DCA 1996), the Second District allowed for a setoff against a settling defendant who was found not liable in a negligence action, relying upon the setoff statute contained in section 768.041(2), Florida Statutes (1993). However, the decision in Lauth failed to mention the effect of this Court's opinion in Wells and the introduction of comparative fault under section 768.81.[3]
As analyzed by Judge Van Nortwick, our decision in Wells was based upon the rationale that the setoff statutes "presuppose the existence of multiple defendants jointly liable for the same damages." Gouty, 766 So.2d at 425 (Van Nortwick, J., concurring in part and dissenting in part). Where a defendant is found 100% liable for the plaintiffs damages, the settling defendant who is not found liable cannot be considered a joint tortfeasor. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 641 n. 2 (Fla.1999) (holding that "[c]ontribution is only available to joint tortfeasors" and "[b]ecause DCSB was 100% liable for the injuries to the spectators, the parties were not joint tortfeasors; therefore contribution is not an available option").
We reject Schnepel's argument that the existence of a release is conclusive as to the applicability of a setoff for damages for which the settling and nonsettling defendants could have been jointly and severally liable. Under the First District's interpretation, if a plaintiff executes a release in favor of one of multiple defendants, the fact that there was a settlement automatically would create joint and several liability for economic damages. Moreover, under the First District's decision, a defendant would always be entitled to a setoff from an award of economic damages, even if, as in Frederic, the defendant was not held jointly and severally liable for the economic damages under section 768.81(3), because its percentage of fault was less than the plaintiff's. This would be contrary to our reasoning in Wells that predicated both the existence of contribution and the setoff statutes on the defendant paying more than its percentage of fault.
We conclude, following our reasoning in Wells, that the applicability of the setoff statutes is predicated on the existence of other tortfeasors who are liable for the same injury as the settling party. The language of the setoff statutes does not suggest a different result in this case. Although the Legislature amended section 768.81(3) in 1999, see supra note 1, the *966 Legislature enacted the setoff statutes before it enacted the comparative fault statute and the language of the setoff statutes has not changed since Wells. See State v. Hall, 641 So.2d 403, 405 (Fla.1994) ("Because the legislature has failed to make any substantive changes to the pertinent statutory language, we must assume that it has no quarrel" with this Court's interpretation of the statute.).
In this case, Schnepel was found 100% liable for Gouty's injuries and the jury expressly rejected a finding that Glock was a joint tortfeasor. The judgment against Schnepel for both economic and noneconomic damages was not based upon joint and several liability, but on Schnepel's percentage of fault, which in this case was found to be 100%.
Accordingly, Schnepel was not entitled to the benefit of a setoff from the award of economic damages. We answer the certified question in the negative, quash the First District's decision, and remand for proceedings consistent with this opinion. Moreover, we disapprove of the Second District's opinion in Lauth to the extent that it is inconsistent with our opinion in this case.
It is so ordered.[4]
WELLS, C.J., and SHAW, HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Although not relevant for purposes of the resolution of the question in this case, the current version of section 768.81(3), which the Legislature amended in 1999, differs significantly from the 1997 version in creating further statutory exceptions when a defendant will not be held jointly and severally liable. See ch. 99-225, Laws of Fla.; § 768.81(3), Fla. Stat. (2000).
[2] Florida currently has three statutes governing contribution and setoff. All three statutes predated the enactment of comparative fault and the abrogation of joint and several liability. Section 768.041, Florida Statutes (2000), provides, in pertinent part:

(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.
(2) At trial, if any defendant shows the court that the plaintiff, or any other person lawfully on his or her behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
Section 46.015, Florida Statutes (2000), provides, in pertinent part:
(1) A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim.
(2) At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or a covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.
Section 768.31, Florida Statutes (2000), entitled the Uniform Contribution Among Joint Tortfeasors Act, provides in pertinent part:
(5) Release or covenant not to sue.-When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
[3] Schnepel also cites to City of Jacksonville v. Outlaw, 538 So.2d 1360 (Fla. 1st DCA 1989), and Department of Transportation v. Webb, 409 So.2d 1061 (Fla. 1st DCA 1981), approved as modified, 438 So.2d 780 (Fla.1983), for the proposition that a finding of joint and several liability is not required under the setoff statute. However, Webb is easily distinguishable because all of the defendants, including those that settled, were found liable. Furthermore, Outlaw and Webb predate this Court's decisions in Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), and Wells. Finally, Schnepel's reliance upon the Fourth District's decision in Centex Rooney Construction Co. v. Martin County, 706 So.2d 20 (Fla. 4th DCA 1997), appears misplaced, as Centex Rooney is a breach of contract action, and thus section 768.81 is inapplicable.
[4] We decline to address the remaining issue raised by Schnepel because it is outside the scope of the certified question.