815 So.2d 687 (2002)
Royal Mende BASEL and Steven Kane as Co-Plenary Guardians of the person and property of Mark Victor Basel, Appellants,
v.
McFARLAND & SONS, INC., a foreign corporation, et al., Appellees.
No. 5D01-827.
District Court of Appeal of Florida, Fifth District.
April 5, 2002.
Rehearing Denied May 8, 2002.
*689 O. John Alpizar of Alpizar, Ville & Camfield, Palm Bay and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellants.
Michael V. Elsberry and Harry W. Lawrence of Lowndes, Drosdick, Doster, Kantor & Reed, Professional Association, Orlando, for Appellees McFarland & Sons, Inc. and Jonathan Queen.
Paul D. Jess, General Counsel, The Academy of Florida Trial Lawyers, Tallahassee and Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, Amicus Curiae for The Academy of Florida Trial Lawyers.
Hal B. Anderson of Billing, Cochran, Heath, Lyles & Mauro, P.A., Fort Lauderdale, Amicus Curiae for Florida Defense Lawyers Association.
COBB, J.
We consider two issues in this appeal: (1) whether it was error to apply the October 1, 1999 amendment to section 768.81, Florida Statutes, limiting joint and several liability, retroactively to this personal injury cause of action which accrued in August, 1994 and (2) whether the trial court erred in refusing to grant the plaintiffs a new trial or additur on the issue of damages.
The plaintiffs, Royal Basel and Steven Kane, are co-guardians of Mark Basel (Basel) who suffered severe brain damage as a result of injuries sustained when the vehicle he was in was struck by a tractor-trailer on I-95 in August, 1994. As a result of his injuries Basel is permanently and totally disabled. The facts surrounding the accident are succinctly set forth in McFarland & Son, Inc. v. Basel, 727 So.2d 266, 268 (Fla. 5th DCA), rev. denied, 743 So.2d 508 (Fla.1999) [Basel I]:
Jonathan Queen was driving an eighteen-wheel car carrier for his employer, McFarland & Son, Inc., at 2:00 a.m. on August 6, 1994. He was headed north on I-95 and had just crossed over the Garden Street overpass in Titusville when he saw a 1984 Grand Prix parked across the right-hand lane and extending perhaps seven inches into the left lane. Later measurements showed the car was between 800 and 924 feet from the top of the overpass. According to Queen, the car's lights were off. He swerved to the left and braked, jackknifed, and hit the car. The car driver, Jean Ann Basel, was killed instantly; her husband, Mark, was ejected from the car and suffered extreme permanent brain injury.
Mark's injuries left him without memory of the accident. Friends of the two testified Mark was living apart from Jean. The night of the accident, the two coincidentally wound up at the same bar and left together in Jean's car. Blood tests showed both were legally drunk at the time of the accident. There is no *690 explanation for how or why the two ended up parking at a 70-degree angle across I-95.
Plaintiffs filed a negligence suit against Jean's estate, Queen, and McFarland & Sons, Inc. and later successfully moved to amend their complaint to add a count against McFarland & Son, Inc. for the negligent hiring, training, and supervision of Queen.
McFarland & Son, Inc. and Queen (defendants) raised the comparative fault of Basel and Jean Basel as affirmative defenses.
In Basel I this court reversed the judgment in favor of Basel finding error in the failure to direct a verdict in favor of McFarland & Son, Inc. on the negligent hiring count. The cause was remanded for a new trial which occurred in November 2000.
The jury returned a verdict on November 17, 2000 which apportioned 19% fault to Queen, 66% to Jean Basel and 15% to Basel. The jury awarded Basel $950,886.07 for past medicals, $224,108 for past lost wages, $868,000 for future medical expenses, and $484,000 for future loss of earning capacity. The jury awarded zero for past and future pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, or loss of capacity for the enjoyment of life. When counsel for plaintiffs objected, counsel for Queen and McFarland & Son, Inc. agreed that the jury had to award some amount for this element of damages. The jury was so instructed and re-deliberated before returning an award of $33,333.33 for past pain and suffering, and $166,666.67 for future pain and suffering, for a total of $2,726,994.07 in damages.
The plaintiffs filed a motion for additur, or in the alternative motion for new trial on damages only, asserting that the undisputed evidence established that Basel's past lost wages were $317,450, his future loss of earning capacity was $933,067 and his future medical expenses were $3,869,471.
The defendants moved the court to enter judgment in accordance with section 768.81, Florida Statutes, as amended by Chapter 99-225 section 27, Laws of Florida, which became effective October 1, 1999. Application of the 1999 statutory amendment would result in a judgment against Queen and McFarland & Son, Inc. being limited to $718,128.90. The plaintiffs filed a motion asking the court to enter judgment against the defendants in accordance with the version of section 768.81, Florida Statutes that existed prior to the October 1, 1999 amendment. Application of that version of the statute would result in judgment being entered against Queen and McFarland & Son, Inc. in the amount of $2,147,945 in economic damages and $38,000 in non-economic damages, for a total of $2,185,995. Judgment would also be entered against the Estate of Jean Basel for $2,147, 945 in economic damages and $132,000 in non-economic damages, for a total of $2,279,945.
The trial court denied the plaintiffs' request for an additur or new trial on damages. The court also ruled that the October 1, 1999 version of section 768.91, Florida Statutes, was applicable to Basel's cause of action and proceeded to enter final judgment against Queen and McFarland & Son, Inc. for $718,128.90 (economic damages of $650,128.90, non-economic damages of $38,000), and against the Estate of Jean Basel for $2,279,945.

APPLICATION OF OCTOBER 1, 1999 AMENDMENT TO SECTION 768.81, FLORIDA STATUTES, TO PENDING CAUSE OF ACTION
At common law, each defendant tortfeasor who caused injuries to a plaintiff was *691 jointly and severally liable for the total of the plaintiff's damages, regardless of the extent of each defendant's fault. Louisville & N.R. Co. v. Allen, 67 Fla. 257, 65 So. 8 (1914). In Smith v. Department of Insurance, 507 So.2d 1080, 1091 (Fla.1987) the supreme court explained the history behind joint and several liability:
Originally, joint and several liability applied when the defendants acted in concert, the act of one being considered the act of all, and each was therefore liable for the entire loss sustained by the plaintiff. The doctrine was later expanded by eliminating the requirement that the parties act in concert and allowing joint and several liability to apply when separate independent acts of negligence combined to produce a single injury. See [Louisville and Nashville]. The doctrine was based on the assumption that injuries were indivisible and there was no means available to apportion fault.
In Walt Disney World Co. v. Wood, 515 So.2d 198 (Fla.1987) this doctrine of joint and several liability was challenged in a case where the verdict found the plaintiff 14% at fault, Walt Disney World 1% at fault and the plaintiff's fiancé, who was not joined as a defendant, 85% at fault. While recognizing logic in Disney's position that it should not be responsible for 86% of the damages, the Florida Supreme Court declined to judicially disturb joint and several liability, instead suggesting that the subject was best left to the legislature.
The legislature enacted section 768.81(3), Florida Statutes, providing for liability to be determined on the basis of the percentage of fault of each tortfeasor. See Fabre v. Marin, 623 So.2d 1182 (Fla. 1993). This 1986 enactment contained a provision applying the statute to causes of action arising after its effective date. See Florida Mining & Materials Corp. v. Van Antwerp, 601 So.2d 621 (Fla. 2d DCA 1992). Under this 1986 legislation, each party was liable for its own percentage of fault except that if a defendant's percentage of fault equaled or exceeded that of the plaintiff, it was liable jointly and severally for the plaintiff's economic damages. The statute precluded joint and several liability for non-economic damages (i.e., pain and suffering), except where the amount of damages (economic and noneconomic) was $25,000 or less.[1]
The October 1, 1999 amendment to section 768.81 altered joint and several liability for economic damages based upon a sliding scale, depending upon whether the plaintiff was with or without fault and depending upon the percentage of fault of the defendant. The amendment made a defendant less than 10% at fault not subject to joint and several liability, regardless of whether the plaintiff had some fault or not. However, if a defendant was 10% to 25% at fault, his joint and several liability was capped at $200,000 if the plaintiff had some fault, and at $500,000 if the plaintiff was without fault. If a defendant was 25% to 50% at fault, his joint and several liability was capped at $500,000 if the plaintiff had some fault, and capped at $1,000,000 if the plaintiff was without fault. If the defendant was more than 50% negligent, his joint and several liability was capped at $1,000,000 if the plaintiff had some fault, and capped at $2,000,000 if the plaintiff was without fault.
Under the 1986 version of section 768.81 (which existed when Basel's cause of action *692 accrued in August 1994), there was no limit to the amount of economic damages that Basel could recover against each defendant whose fault was equal to or greater than his. As applied to the jury's verdict, Basel would be entitled to recover all of his economic damages, reduced by his 15% negligence, from all defendants since his percentage of negligence was less than each defendant's percentage of negligence. A judgment for economic damages would be entered against Queen, McFarland & Son, Inc. and the Estate of Jean Basel for $2,147,945. In addition, judgment for noneconomic damages would be entered against Queen and McFarland & Son, Inc. for $38,000 and against the Estate for $132,000.
The 1999 amendment to section 768.91 significantly changed what Basel could actually recover from Queen and McFarland & Son, Inc. His ability to recover economic damages from them was reduced from $2,147,945 to $680,129.90. Basel argues that this monetary difference is a substantive one and that the statutory amendment can only be applied prospectively and not retroactively so as to impair what he claims is a vested right.
The defendants counter that Chapter 99-225, section 27, Laws of Florida, which contained the amendment to section 768.81, demonstrates that the legislature intended the amendment to apply to existing causes of action as the legislature viewed the amendment as causing no substantive change to vested rights.
The trial court, in its ruling, found that no substantive constitutional rights were affected by enactment of Chapter 99-225, section 27, that the legislative history of the amendment recognized the power of the legislature to affect joint and several liability and that the legislature, in setting the effective date of October 1, 1999 did not, as it could have, limited the section's applicability to causes of action arising after its effective date.
Two interrelated inquiries arise when considering whether statutes or amendments thereto should be retroactively applied. The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute retrospectively. If the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible. Memorial Hospital-West Volusia, Inc. v. News-Journal Corp., 784 So.2d 438 (Fla.2001); Metropolitan Dade County v. Chase Federal Housing Corp., 737 So.2d 494 (Fla. 1999). Even when the legislature expressly states that a statute is to have retroactive application, courts will refuse to apply the statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties. See State Farm Mutual Auto. Insurance Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995). In the absence of clear legislative intent, a law affecting substantive rights is presumed to apply prospectively only while procedural or remedial statutes are presumed to operate retrospectively. See Young v. Altenhaus, 472 So.2d 1152 (Fla. 1985).
While the defendants assert that Chapter 99-225, section 27 demonstrates that the legislature intended the amendment to be applied to existing causes of action, the case law dealing with legislative history speaks of "explicit" or "clear" legislative intent. See, e.g., Chase Federal, 737 So.2d at 499; Laforet, 658 So.2d at 61. There is no express language in Chapter 99-225, section 27 or the legislative analysis accompanying its adoption (House Committee on Judiciary, Final Analysis, HB 775) (Ch. 99-225) providing for its retroactive application. In Arrow Air, Inc. v. Walsh, *693 645 So.2d 422, 425 (Fla.1994), our supreme court quoted from the United States Supreme Court decision in Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 1507-1508, 128 L.Ed.2d 229 (1994) in more fully explaining legislative intent in this context:
Requiring clear intent assures that [the legislature] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to [the legislature] responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.
In order to determine legislative intent as to retroactivity, both the terms of the statute and its purpose must be considered. Chase Federal, 737 So.2d at 500. The mere fact that retroactive application of an amendment would further the statute's purpose is not sufficient. Id. Furthermore, simply because the legislature was aware of the law regarding joint and several liability when it enacted Chapter 99-225 does not itself establish a clear intent to apply the amendment retroactively.
Chapter 99-225 contains some 36 sections. Some, such as section 22 relating to punitive damages, contain language that "the provisions of this section shall be applied to all causes of action arising after the effective date of this act." Section 27 relating to joint and several liability contains no such language and thus is governed by the language of section 36 which provides "except as otherwise provided herein, this act shall take effect October 1, 1999." The defendants argue that by failing to include language in section 27 limiting its application to causes of action accruing on or after the effective date of the act, the legislature clearly intended the change in section 27 to be effective to any jury verdict rendered after October 1, 1999, regardless of when the cause of action accrued. This, however, is by no means evident. By providing in the 1986 enactment that the change in the law of joint and several liability would apply to causes of action accruing after its effective date, a strong argument could be made that the legislature recognized that changes affecting joint and several liability affect substantial rights and should apply prospectively. The legislature may have believed it was unnecessary in 1999 to address the matter given its clear directive in 1986. Conversely, the legislature may have believed the 1999 amendment was just a "fine tuning" of joint and several liability and that retroactive application was warranted. Or perhaps the legislature was uncertain whether such a change could be applied to existing causes of action and decided to leave the issue up to the courts. In any event, what is necessary in this regard is an explicit or clear intent by the legislature that the amendment be applied retroactively. Such intent is missing from the language of Chapter 99-225.
As to the purpose of the amendment, it is clear from the legislative history that the legislature intended to move liability for unintentional torts closer to a pure fault standard. See House Committee on Judiciary, Final Analysis, H.B. 775 (Ch. 99-225) pp. 3, 22. The legislature was "enhancing substantial fairness by reducing payments by innocent parties." Id. at p. 21. This is not, however, a situation where the legislature acted shortly after a controversy as to the interpretation of prior legislation and attempted to clarify such legislation. See Chase Federal. The legislature *694 rather further acted to limit joint and several liability 13 years after its initial undertaking. It is not entirely clear that the legislature intended this effort, unlike the 1986 effort, apply to existing causes of action. Retroactive application will not be left to implication.
In the absence of an explicit legislative expression, the default rule is invoked and the inquiry becomes whether the amendment in Chapter 99-225 to section 768.81 is substantive in nature or procedural or remedial. For purposes of this analysis, substantive law prescribes duties and rights while procedural law concerns means and methods to apply and enforce those duties and rights. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla. 1994); Kerr Construction, Inc. v. Peters Contracting, Inc., 767 So.2d 610 (Fla. 5th DCA 2000).
In Mancusi the court considered whether an amendment to section 768.73(1)(a), Florida Statutes limiting the amount of punitive damages to no more than three times the amount of any compensatory damages applied to a cause of action which predated the effective date of the amendment. The court found the amendment to be substantive rather than procedural. The court ruled that while the legislature had the authority to regulate or even eliminate the right to punitive damages, the amendment did not apply to Mancusi's cause of action.
The defendants assert that Mancusi is distinguishable as it involved a change in the amount of punitive damages that could be recovered while here the measure of the plaintiff's total damages remains unchanged. The defendants' position is that the issue here merely concerns collectibility of a judgment. However, the change in joint and several liability affects a defendant's existing legal obligation to pay economic damages and a plaintiff's right to recover such damages from a particular defendant where joint tortfeasors are involved. Mancusi suggests that such a change relates to rights and duties and not merely to means and methods of enforcing those rights and duties.[2] The defendants point out that in Smith v. Dept. of Insurance, 507 So.2d 1080, 1091 (Fla.1987) our supreme court expressly held that a plaintiff has no right to recover for injuries beyond those caused by the particular defendant. This holding recognizes that the legislature has the authority to alter the common law as well as a statutory definition of damages. See Laforet, 658 So.2d at 61; McLeod v. Continental Ins. Co., 591 So.2d 621, 625 (Fla.1992).[3] Whether such *695 an alteration should be given retroactive effect is a separate question.
The defendants argue that the change was remedial in nature and therefore is to be applied to pending cases in order to fully effectuate the legislation's intended purpose. Arrow Air, 645 So.2d at 425. Most statutory changes are designed to improve a pre-existing situation and to bring about an improved state of affairs. Nevertheless, the presumption is that statutory enactments apply prospectively only. Further, simply because the legislature indicates something is remedial does not necessarily mean it is to be applied retroactively. Laforet, 658 So.2d at 61. If a statute accomplishes a remedial purpose by creating new substantive rights and imposing new legal burdens, the presumption against retroactivity still applies. Chase Federal, 737 So.2d at 500, n. 9.[4]
The defendants argue that Florida Patient's Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla.1985) controls. In that case a statute provided that the Fund would pay any medical malpractice judgment over $100,000 at $100,000 a year. A subsequent amendment deleted the yearly cap. The supreme court held that the statutory amendment was remedial because:
The amendment does not alter the size of the judgment in favor of Von Stetina; rather it prescribes the method by which the judgment is to be paid. We find that the statute simply changes the form of its enforcement and does not substantially impair any existing rights.
474 So.2d at 788.
Here, however, the 1999 amendment alters the size of Basel's enforceable judgment against certain of the defendants. Von Stetina is distinguishable.
Village of El Portal v. City of Miami Shores, 362 So.2d 275 (Fla.1978) holding that the Uniform Contribution Among Joint Tortfeasors Act could be applied retroactively as a remedial statute is likewise inapplicable. Before the Act, each defendant was liable for the full amount of the judgment. Under the Contribution Act a defendant's liability was not increased, but the Act merely provided the method by which the liability of each of the tortfeasors could be limited to his pro rata share of the judgment. The court stated that the Contribution Act "does not increase the liability of any of the participants in the offense," and therefore it could be applied retroactively. In contrast, application of the 1999 amendment to section 768.81, Florida Statutes, to this case acts to decrease the pre-existing legal liability of some of the defendants to the plaintiff.
The defendants point out that in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) the supreme court, after adopting the doctrine of comparative negligence and repudiating the common law rule of contributory negligence, set the timing of the application of that new principle to pending cases and did not look to when the cause of action accrued. However, in that situation the supreme court was not trying to discern legislative intent. Hoffman involved a change in decisional rather than statutory law. Generally a decision of a court of last resort which overrules a prior decision is retrospective as well as prospective in its application unless declared by the opinion to have prospective effect only. Melendez v. Dreis & Krump Mfg. *696 Co., 515 So.2d 735 (Fla.1987).[5] In this case the inquiry concerns retroactive application of a statutory amendment. Since the legislature provided no explicit indication that retroactive application was intended and the amendment concerns substantive law, the amendment is presumed to apply prospectively only.
The plaintiffs rely on decisions from California, Wisconsin and Utah holding that statutes limiting the common law doctrine of joint and several liability cannot be applied retroactively. Matthies v. Positive Safety Manufacturing Co., 244 Wis.2d 720, 628 N.W.2d 842 (2001), Stephens v. Henderson, 741 P.2d 952 (Utah 1987); Evangelatos v. Superior Court, 44 Cal.3d 1188, 246 Cal.Rptr. 629, 753 P.2d 585 (1988). In each case the courts found a statutory alteration in the common law rule of joint and several liability could not be applied retroactively as the statutes impaired the plaintiff's ability to recover all his damages.
While in Florida the 1986 statute constituted the dramatic policy shift from the common law of joint and several liability, Gouty v. Schnepel, 795 So.2d 959 (Fla. 2001), the 1999 amendment constitutes a further alteration in a plaintiffs right to recover from a particular defendant for his injuries. We conclude that the 1999 amendment must be applied prospectively and is inapplicable to this case.[6]

NEW TRIAL/ADDITUR ISSUE
The trial court's determination regarding additur may be reversed on appeal only where there is a clear abuse of discretion. Arena Parking, Inc. v. Lon Worth Crow Insurance Agency, 768 So.2d 1107 (Fla. 3d DCA 2000). If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999).
Section 768.74, Florida Statutes governs additur and authorizes trial courts to review the amount of damages awarded under a verdict to determine if they are "inadequate in light of the facts and circumstances which were presented to the trier of fact." § 768.74(1). In denying additur, the trial court stated that it considered the statutory guidelines found in section 768.74(5):[7]

*697 2. The Court, which heard all of the testimony in the case as the presiding judge, recalls that the Plaintiff's proof of damages rested principally upon the opinion testimony of expert witnesses, whose testimony the jury was entitled to accept, to reject, or to give such weight as the jury believed appropriate in light of all the evidence in the case, as well as the experts' testimony and the basis thereof. The jury was not bound to accept such opinion testimony as its own. Department of Transportation v. Duplissey, 751 So.2d 117, 119 (Fla. 5th DCA 2000); Fla. Std. Jury Inst. 2.2.
3. The jury in this case conscientiously considered the evidence and their collective memory of same, along with the instructions of the Court, for almost thirteen hours over a two-day period, before arriving at a verdict. The Court simply cannot conclude that the jury's weighing of the evidence and arriving at its verdict was the result of any improper influence, or misapprehension of the evidence or of the jury's responsibility with respect to the case, and the verdict is not against the manifest weight of all of the evidence.
The defense did not concede Basel's claim of damages. The plaintiffs admit that all but one of their witnesses on damages were expert witnesses.[8] Florida Standard Jury Instruction (Civil) No. 2-2, which was read to the jury provides:
You have heard opinion testimony on certain technical subjects from persons referred to as expert witnesses. Some of the testimony before you is in the form of opinions about certain technical subjects.
You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training or education of knowledge, skill, experience, training or education of the witness, the reasons given by the witness for the opinion expressed, and all of the other evidence in the case.
The plaintiffs' argument that it was error not to award additur directly collides with this principle that a jury is not required to accept even uncontroverted opinion evidence from an expert. See Department of Transportation v. Duplissey, 751 So.2d 117 (Fla. 5th DCA 2000). The cases relied upon by Basel for reversal, Silverman v. Gockman, 714 So.2d 671 (Fla. 4th DCA 1998) and Davis v. Caterpillar, Inc., 787 So.2d 894 (Fla. 3d DCA 2001), do not discuss the nature of the testimony of damages in finding a clear abuse of discretion on the additur issue. In fact, in Davis the trial court granted additur but the appellate court then increased the amount which was still "wholly adequate." 787 So.2d at 899. In the instant case the trial court made no finding of inadequacy.
Appellate decisions reversing the denial of a motion for additur are rare and generally limited to situations where the amount of damages awarded is "so inadequate as to shock the conscience of the court." Davis, 787 So.2d at 899. See, e.g., Arena Parking (plaintiffs recovered only 16% of damages proved); Silverman *698 (plaintiffs recovered less than half of the damages established by the evidence).
The plaintiffs argue that the undisputed evidence established that Basel's past wages for 6.26 years were $317,450 and that the jury award of $224,108 cannot stand. Basel's annual salary was established at $39,302 excluding overtime pay. However, some years Basel suffered through layoffs and received much less than $39,302. The jury appears to have concluded that given the cyclical nature of Basel's employment, anticipating significant, sustained increases in compensation was unwarranted. The award for past lost wages, while not generous, is not wholly inadequate.
Concerning future damages, such damages are by nature less certain than past damages. Allstate Insurance Co. v. Manasse, 707 So.2d 1110 (Fla.1998). As to loss of future earning capacity, Basel's expert, Dr. Raffa, relied upon an annual salary of $55,972 plus an annual 3% rate of increase which the jury apparently believed to be excessive. Further, Dr. Raffa did not consider the effect of income tax in his calculations. Again the jury's award of $484,000 is not wholly inadequate.
The same is true of the award of $868,000 for future medical costs. Dr. Raffa's testimony that the present value of the cost of Basel's future medical care was $3,866,360 was predicated on a life expectancy of 32.6 years. At the time of trial, Basel was 44 years of age. Thus the jury was asked to believe that Basel would survive until he was nearly 77 years of age. Evidence of life expectancy is not binding on the jury but may be considered together with other evidence bearing on the victim's health, age and physical condition in determining the probable length of the victim's life. See Standard Jury Instructions-Civil, 711 So.2d 1, 3 (Fla.1998). The jury was not required to accept the expert's opinion that Basel, who presented extensive medical testimony that he suffered a severe, disabling brain injury in the accident, would live another 32.6 years. The trial court did not abuse its discretion in denying additur.
The final judgment is reversed for entry of a corrected final judgment applying the version of section 768.81(3), Florida Statutes, in existence in August, 1994.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] In Fabre the supreme court ruled that fault could be apportioned to non-party wrongdoers. For a non-party to be included on a jury verdict form, however, the defendant must plead the non-party's negligence as an affirmative defense. Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262 (Fla. 1996).
[2] Several cases relied upon by the defendants are distinguishable. Summerlin v. Tramill, 290 So.2d 53 (Fla.1973) held that repeal of the guest-passenger gross negligence statute applied retroactively to pending cases. The statute was procedural in nature because it changed the burden of proof from gross negligence to negligence. In Tel Service Co. v. General Capital Corp., 227 So.2d 667 (Fla. 1969) the court held that an action predicated on remedies provided by the usury statutes had retroactive application. In Walker & La-Berge, Inc. v. Halligan, 344 So.2d 239, 243 (Fla.1977) the court explained Tel Service Co. involved only the measure of damages and did not work any modification of fundamental substantive rights.
[3] The legislative history of Chapter 99-225 shows that the legislature was fully aware of its authority to limit joint and several liability:

HB775 does not abolish any cause of action, cap awards for compensatory damages or otherwise deny substantive rights constitutionally protected by the right to access courts.... [T]he new limitations on joint and several liability ... reduce responsibility for damages arising from the fault of others while preserving full liability for compensatory damages caused by one's own fault.
House Committee on Judiciary, Final Analysis, HB 775 (Ch. 99-225) pp. 21-22.
[4] In Chase Federal the court held that the express terms and purpose of the Dry Cleaning Contamination Cleanup Act demonstrated the legislature's intent that the Act's immunity provisions apply retroactively to protect entities from lawsuits to recover rehabilitation costs.
[5] In United States v. Security Industrial Bank, 459 U.S. 70, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982), then Justice Rehnquist explained the principles in this regard:

The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student. [Citations.] This Court has often pointed out: `[T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past...' The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." (Emphasis added).
[6] Given our conclusion, it is unnecessary to address the plaintiffs' constitutional challenge to Chapter 99-225. See Finch v. Fitzpatrick, 254 So.2d 203 (Fla.1971)(courts will not address constitutionality of statute where case can be disposed of on other grounds).
[7] These are:

(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
[8] A human resources representative from Basel's employer testified as to Basel's past salary. However, it was an expert witness, Dr. Raffa, who projected Basel's income over time.